

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Trans Union LLC and TransUnion Interactive, Inc., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| Equifax Information Services LLC, Equifax Inc., and Equifax Consumer Services LLC f/k/a Equifax Consumer Services, Inc., | ) |
| | ) |
| Defendants. | ) |

**17 CV 8546**
**JUDGE ELLIS**
**MAGISTRATE JUDGE VALDEZ**

**JURY TRIAL DEMANDED**

**FILED UNDER SEAL**

## COMPLAINT

Plaintiffs Trans Union LLC and TransUnion Interactive, Inc. (collectively "TransUnion"),

bring this Complaint against Defendants Equifax Information Services LLC, Equifax Inc., and

Equifax Consumer Services LLC f/k/a/ Equifax Consumer Services, Inc. (collectively "Equifax")

and allege the following:

### NATURE OF ACTION

1.      This is an action for declaratory relief and anticipatory repudiation of contract ▮▮▮▮

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

2.      TransUnion and Equifax each provide various consumer credit products and

services to consumers, including consumer credit reports from the three major credit reporting

companies, commonly referred to as "3-in-1" or "Tribureau" reports, and alerts regarding new

information posted to those credit reports (collectively, "Three-Bureau Monitoring"). TransUnion

and Equifax comprise two of the three major credit bureaus.

3.      To enable the data sharing required to supply multi and Three-Bureau Monitoring, TransUnion and Equifax entered into a Reciprocal Data Supply Agreement (as amended from time to time, the "Agreement").  The Agreement sets forth the pricing terms for different data products ("Products") supplied by TransUnion to Equifax and *vice versa*.

4.      One of the Products supplied under the Agreement is Credit Monitoring, which is provided between the parties at an ███████████████████████████████████ ███████████████████████████████

5.      Through an amendment to the Agreement effective July 9, 2017 ("Amendment No. 3"), the parties added a new Product to the Agreement for credit monitoring specifically and only for ██████████████████████████████████████████ The parties agreed to provide this Product to one another ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████     Critically,  the  express  and  unambiguous  language  agreed  to  by  the  parties  in Amendment No. 3 makes it clear that the ██████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████



10.     Pursuant to the Agreement, TransUnion invoices Equifax on a monthly basis in arrears.  TransUnion sent an invoice to Equifax on or about September 25, 2017 that included charges for Credit Monitoring



11.     When TransUnion asked Equifax about this underpayment and misapplication of the ████████████ Equifax unequivocally confirmed that the underpayment was intentional and further indicated that it intended to pay only the ████████████ going forward for the large

majority of its Credit Monitoring purchases from TransUnion, █████████████████

████████████████████████████

    12.    Equifax eventually agreed to pay ██████████ for the September 25, 2017

invoice only because that invoice detailed Credit Monitoring units ███████████

██████████████████ Equifax has maintained its erroneous and improper position

that it is entitled to the ████████████████████████████████████

██████ Equifax corrected its shortfall with a supplemental payment on or about November 16,

2017.

    13.    Equifax continued to insist that it would apply the ██████████ to the majority

of Credit Monitoring units on current and future invoices. ██████████████████

████████████████

    14.    On November 20, 2017, Equifax sent a letter to TransUnion, ████████

██████████████████████████████████████

████████████████████████

    15.    TransUnion's next invoice to Equifax was dated October 25, 2017 and covered

Credit Monitoring ████████████████████████████ TransUnion

expects Equifax to remit payment for this invoice ██████████

    16.    Equifax's November 20, 2017 letter makes clear that it will again pay only the ███

██████ for Credit Monitoring for consumers Equifax deemed to be ██████████

████████████████████████████████ This

will result in a significant underpayment to TransUnion. If Equifax continues to wrongfully apply

the ██████████ to TransUnion's invoices, as it has expressly declared it will, TransUnion

will suffer significant monetary and non-monetary damages every month.

4

17.     TransUnion seeks a declaration of its rights under the Agreement, and to recover damages sustained from Equifax's wrongful and unilateral application of the ██████████ in violation of the Agreement and Amendment No. 3.

## PARTIES

18.     Plaintiff Trans Union LLC is a Delaware limited liability company with its principal place of business at 555 W. Adams, Chicago, Illinois 60661. The sole member of Trans Union LLC is TransUnion Intermediate Holdings, Inc. TransUnion Intermediate Holdings, Inc. is a Delaware corporation with its principal place of business at 555 W. Adams, Chicago, Illinois 60661.

19.     Plaintiff TransUnion Interactive, Inc., a wholly-owned subsidiary of Trans Union LLC, is a Delaware corporation with its principal place of business at 555 W. Adams, Chicago, Illinois 60661.

20.     On information and belief, Defendant Equifax Information Services LLC is a Georgia limited liability company with its principal place of business at 1550 Peachtree Street, NW, Atlanta, Georgia 30309. Equifax Inc. is the sole member, parent company, and 100% owner of Equifax Information Services LLC.

21.     On information and belief, Defendant Equifax Inc. is a Georgia corporation with its principal place of business at 1550 Peachtree Street, NW, Atlanta, Georgia 30309.

22.     On information and belief, Defendant Equifax Consumer Services LLC f/k/a Equifax Consumer Services, Inc. is a Georgia LLC with its principal place of business at 1550 Peachtree Street, NW, Atlanta, Georgia 30309. Equifax Consumer Services, Inc. converted to Equifax Consumer Services LLC in 2007. Equifax Consumer Services, Inc. was a Georgia corporation with its principal place of business at 1550 Peachtree Street, NW, Atlanta, Georgia

30309. Equifax Inc. is the sole member, parent company, and 100% owner of Equifax Consumer Services LLC.

## JURISDICTION, VENUE AND CHOICE OF LAW

23.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the parties are completely diverse and the amount in controversy exceeds $75,000.

24.     The Court has personal jurisdiction over each Defendant. Equifax Information Services LLC and Equifax Inc. both applied for and obtained licenses to transact business as a foreign corporation or LLC in the State of Illinois with the Illinois Secretary of State, maintain valid certificates of good standing with that office, and maintain a registered agent in Illinois. Further, on information and belief, both Defendants exercised substantial, systematic and continuous contacts with Illinois by doing business in Illinois, serving both financial institutions in Illinois and consumers in Illinois, and seeking additional business in Illinois. Equifax also continues to seek new business opportunities in Illinois.

25.     Specific to this dispute, Equifax Information Services LLC entered into and agreed to be bound by the Agreement with TransUnion, a citizen of Illinois, received significant and ongoing benefits from TransUnion originating from Illinois, paid or caused to be paid invoices under the Agreement into an Illinois bank account, failed to fulfill, or cause to be fulfilled, its contractual obligations under the Agreement with TransUnion, including payment in Illinois of the September 25, 2017 invoice, and has unequivocally repudiated its obligations to pay the October 25, 2017 invoice and future invoices ██████████ into TransUnion's Illinois bank account. Under the terms of the Agreement (Exhibit 1, ¶ 2(a)), Equifax Consumer Services LLC and Equifax Inc., by the signature of Equifax Information Services LLC, are bound by the Agreement

with TransUnion, a citizen of Illinois, received significant and ongoing benefits from TransUnion originating from Illinois, paid or caused to be paid invoices under the Agreement into an Illinois bank account, failed to fulfill, or cause to be fulfilled, their contractual obligations under the Agreement with TransUnion, including the payment in Illinois of the September 25, 2017 invoice, and have unequivocally repudiated their obligations to pay the October 25, 2017 invoice and future invoices ▮▮▮▮▮▮▮ into TransUnion's Illinois bank account. Through the Agreement, Equifax reached out and created a continuing relationship with continuing obligations between Equifax and TransUnion in Illinois.

26.     The Agreement was and is performed, in substantial part, in Illinois. Specifically, but not exhaustively:

- the data which TransUnion provides to Equifax under the terms of the Agreement, and for which TransUnion was and will continue to be underpaid, is located in, and delivered to Equifax from, Chicago, Illinois;

- the benefits Equifax receives under the Agreement every month are derived from TransUnion's employees, systems, and assets in Illinois, and services performed by TransUnion in Illinois;

- the benefits Equifax provides to TransUnion under the Agreement are directed to and realized by TransUnion in Illinois;

- Equifax sends regular, ongoing requests for credit information regarding specific consumers to TransUnion in Illinois where such requests are processed and fulfilled under the terms of the Agreement (Exhibit 1, ¶ 4(c) and (h));

- invoices for data and services provided by Equifax to TransUnion under the Agreement are sent to TransUnion in Chicago, Illinois where they are processed and assigned for payment;

- invoices for data and services provided by TransUnion to Equifax under the Agreement are generated and sent to Equifax by TransUnion from Illinois and bear a remittance address in Chicago, Illinois;

- Equifax remits payment for data and services provided by TransUnion under the Agreement to a bank account in Illinois;

- by Equifax's wrongful underpayment of the September 25, 2017 invoice, Equifax inflicted injury and caused TransUnion to suffer damages in Illinois;

- by Equifax's wrongful repudiation of its obligation to pay the October 25, 2017 invoice and future invoices at ███████████, Equifax will inflict ongoing injury and cause TransUnion to suffer additional damages in Illinois;

- TransUnion remits payment for data and services provided by Equifax under the Agreement from a bank account in Illinois;

- Equifax employees regularly communicate by telephone and email with TransUnion employees located in Illinois in order to facilitate performance of the Agreement and fulfill the parties' respective obligations;

- any notices required or permitted pursuant to the Agreement are required to be sent to TransUnion's address in Chicago, Illinois (Exhibit 1, ¶ 12(b));

- Equifax negotiated Amendment No. 3 with TransUnion employees who were located in Illinois, including through telephone calls with TransUnion employees

located in Illinois, and through written communication and exchanging drafts of Amendment No. 3 with TransUnion employees located in Illinois;

- Equifax expressly repudiated its obligations under the Agreement by sending the November 20, 2017 letter to TransUnion in Chicago, Illinois.

27.     Venue in this district is proper because a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Illinois, including (1) Equifax's negotiations with TransUnion personnel in Illinois with respect to Amendment No. 3; (2) TransUnion's performance under the Agreement for which it is owed, but will not receive, the ███████, and (3) Equifax's failure to perform under the Agreement by intentionally making underpayments to TransUnion in the district and unequivocally expressing its intent to make future underpayments in this district. 28 U.S.C. § 1391(b)(2). Alternatively, venue is proper in this district under 28 U.S.C. § 1391(b)(3) because Equifax is subject to the Court's personal jurisdiction in this district.

28.     The Agreement provides that it "shall be governed by and construed and enforced in accordance with the laws of the State of Delaware, without regard to conflicts of laws principles." (Exhibit 1, ¶ 12(h).

## FACTUAL ALLEGATIONS

### *The Reciprocal Data Supply Agreement*

29.     TransUnion and Equifax each provide various consumer credit products and services to consumers, including Three-Bureau Monitoring.

30.     To enable these services, Trans Union LLC and Equifax Information Services LLC

entered into the Reciprocal Data Supply Agreement, effective October 1, 2011,[1] attached and incorporated into this Complaint as Exhibit 1.

31.     In addition to Trans Union LLC and Equifax Information Services LLC, the Agreement provides benefits to and places certain obligations on "Retailer Affiliates," which are listed in Exhibit B of the Agreement and specifically include Equifax Consumer Services, Inc. (converted to Equifax Consumer Services LLC) and TransUnion Interactive, Inc. (Exhibit 1, Exhibit B.) By its terms, the Agreement binds Equifax Consumer Services LLC as well as Equifax Inc., which controls and owns 100% of the stock or membership interest of both Equifax Information Services LLC and Equifax Consumer Services LLC. (*See* Exhibit 1, ¶¶ 1, 2(a), Exhibit B.)

32.     Exhibit D to the Agreement contains a table listing the fees ("Transaction Fees") for ▮▮▮▮▮▮▮▮▮▮ provided under the Agreement by TransUnion and Equifax. (Exhibit 1, Exhibit D). The ▮▮▮ Products supplied under the original Agreement include Monitoring.[2]

33.     The Agreement has neither expired nor terminated and will continue to automatically renew for successive terms of one year. (Exhibit 1, ¶ 9(a).) The current term extends through September 30, 2019.

### *Amendment No. 3*

34.     On July 10, 2017, the parties executed Amendment No. 3, effective July 9, 2017. (Exhibit 2.) Amendment No. 3 did not modify the Transaction Fees for any of the existing

---

[1]   To enable Three-Bureau Monitoring, TransUnion has a separate reciprocal data supply agreement with Experian, the third credit bureau, not directly at issue in this Complaint. Upon information and belief, Equifax also has a bilateral data supply agreement with Experian.

[2]   In later Amendments and throughout this Complaint, Monitoring is referred to as Credit Monitoring.

Products provided under the Agreement. Specifically, Amendment No. 3 did not modify ████

████████ that applied to Credit Monitoring.

35. ████████████████████████████████████

████████████████████████ ████████████

36. For ████████████ Amendment No. 3 ████████████

████████████████████████████████████

████████████████████████████████████

37. Specifically, Amendment No. 3 ████████████████

████████████████████████████████████

████████████ (*Id.* (emphasis added).) ████████████

████████████████████████████████████

████████████████████████████████████

39. Amendment No. 3 also includes additional limitations and conditions, none of

which are satisfied ████████████████████

40. To facilitate invoicing and payment at the ████████████ and track monitoring

units for ████████████████████████████

████████████████████████████████████

████████

41.     At the time that the parties executed Amendment No. 3, Equifax ████████ ████████████████████████████████████████████████████████████████ ██████████ Credit Monitoring ███████████████████████████ was invoiced, and is intended to be invoiced, ██████████████

42.     On information and belief, Equifax used ██████████████████████████ ████████████████████████████

43.     On information and belief, Equifax used ██████████████████████████ ████████████████████████████████████████████████████████████████████████

44.     As the ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████ TransUnion informed Equifax on or about July 17, 2017 ████████████ ████████████████████████████████████████████████████████████████████████ ██████ but that certain contact information for a technical resource was needed from Equifax ████████████████████████████████████████

45.     Equifax did not provide this technical resource information until months later on October 20, 2017.  At that time, Equifax requested that TransUnion ██████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

### *The Equifax Data Breach and Response*

46.     The Equifax Breach occurred approximately six weeks *before* the parties executed Amendment No. 3.  Equifax never shared this information with TransUnion while the parties were negotiating the terms of Amendment No. 3 in June and July of 2017.

47.     On September 7, 2017, Equifax Inc. publicly announced "a cybersecurity incident potentially impacting approximately 143 million U.S. consumers." (Exhibit 3, Press Release, *available at* https://investor.equifax.com/news-and-events/news/2017/09-07-2017-213000628.) The release claims that Equifax "discovered the unauthorized access" on July 29, 2017, but admits that that breach occurred in May 2017.  (*Id.*).  The release states:  "Based on the company's investigation, the unauthorized access *occurred* from mid-May through July 2017." (*Id.* (emphasis added).)  Equifax repeated this finding in the consumer notice section of the website it established to inform consumers about the Equifax Breach.  (Exhibit 4, Equifax Consumer Notice, *available at* https://www.equifaxsecurity2017.com/consumer-notice/.)

48.     Equifax never provided TransUnion with any direct notice of the Equifax Breach either before or after the public announcement.

49.     In response to the Equifax Breach, Equifax announced that it would offer its existing Trusted ID Premier product to any consumer with a U.S. Social Security Number free of charge for one year.  Trusted ID Premier includes Three-Bureau Monitoring, which means that Equifax must purchase Credit Monitoring from TransUnion to service its Trusted ID Premier members.

50.     Trusted ID Premier is not a new Equifax product.  Equifax was already purchasing Credit Monitoring from TransUnion in order to serve its existing Trusted ID customers well in

13

advance of the Equifax Breach.  Credit Monitoring for Trusted ID Premier ████████████
████████████████████████████████████████

### *Equifax's Wrongful Application of the* ██████████████

51.     On September 12, 2017, days after Equifax announced its data breach, TransUnion Interactive's General Counsel sent a letter to Equifax's General Counsel, noting that, based on publicly available information, "the unauthorized access of Equifax data *occurred* beginning in mid-May 2017."  The letter was clear that, because the Equifax Breach occurred before July 1, 2017, ████████████████████████████████████████████████████████████
████████████████████████████████████████████████ under Exhibit

D of the Agreement.  (Exhibit 5, Sept. 12, 2017 Letter.)

52.     On or about September 25, 2017, TransUnion submitted monthly invoices to Equifax for Credit Monitoring units provided to Equifax ██████████████████████████
██████████████

53.     After Equifax provided the information required to activate the ██████████
████████ on October 20, 2017, TransUnion Interactive's General Counsel – to ensure that Equifax understood its position – sent another letter to the General Counsel of Equifax on November 2, 2017 restating the inapplicability of the ████████████████████████████████████

████████████ "TransUnion expects that Equifax will honor its contractual obligations and not

████████████████████████████████████████████████████████████

██████████████ The letter further requested:  "If Equifax is aware

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

14

██████ (Exhibit 6, Nov. 2, 2017 Letter.)

54.     On or about ████████ Equifax, through Equifax Inc., wired funds to TransUnion for payment of TransUnion's September 25, 2017 invoices. Equifax paid the ████ ████████████████ but dramatically underpaid ████████ Equifax provided no basis or explanation for this underpayment at the time, notwithstanding TransUnion's September 12 and November 2 letters.

55.     Dividing the total number of Credit Monitoring units invoiced to Equifax ████ ███████████ shows that Equifax only paid ████████

56.     This underpayment was a material breach of the Agreement.

57.     First, at the time of the September 25, 2017 invoices, Equifax had not provided the necessary technical contact information to TransUnion to even ████████ Neither had Equifax requested ████████ And Equifax never indicated that it was attempting ████████ under Amendment No. 3 ████████ Indeed, pursuant to the parties' agreement, Equifax is not permitted to ████████

58. Second, the number of Credit Monitoring units charged in the September 25, 2017

invoices is based on the number of Credit Monitoring units provided by TransUnion



59. Third,

60. Fourth, Equifax did not seek to identify

61. TransUnion sought clarification from Equifax about the short-payment

62. On November 9, 2017, TransUnion's Vice President of Indirect Sales contacted Equifax's Enterprise Alliance Manager. The purpose of that call was to seek clarification from Equifax about the underpayment and determine if Equifax made a clerical mistake. In that telephone conversation, Equifax unconditionally expressed that it intends to apply the

16

███ to Credit Monitoring units on current and future invoices that Equifax deems ██████████

████████████████████████ Equifax's Enterprise Alliance Manager is an agent of Equifax with authority to speak on behalf of the company.

63.     After continued discussions between the parties, Equifax admitted that although it intends to unilaterally apply the ████████████████████████████████████████████

███████ it had mistakenly applied the ████████████████████████ for the September 25, 2017 invoice.  Equifax did not concede that the the █████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

64.     On or about November 16, 2017, Equifax wired payment to TransUnion to redress the delinquent amount owed on the September 25, 2017 invoice to ████████████

65.     Equifax did not respond to TransUnion's September 12 and November 2 letters until November 20.  (Exhibit 7, Nov. 20, 2017 Letter.)  ████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
█████████████████ █████████████████████████████████████████
███████████████████████████████████████████████

66.     TransUnion's next invoices to Equifax were dated October 25, 2017 for Credit Monitoring units provided to Equifax ████████████████████████████████████



████████████████████████████ TransUnion expects Equifax to remit payment

for these invoices in ████████████████.

67.    Equifax's November 20, 2017 letter makes clear that it will wrongfully pay only

██████████████ or Credit Monitoring Equifax deems ████████████████████████

This will result in a significant underpayment to TransUnion and constitute a material breach of

the Agreement.

68.    As stated above, ████████████████████ are not eligible for the

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ Having publicly admitted that the

Equifax Breach occurred before July 1, 2017, these facts cannot reasonably be disputed by

Equifax. Further, Equifax has not identified or quantified ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

69.    TransUnion will continue to invoice Equifax each month for the remaining term of

the Agreement for Credit Monitoring provided to Equifax ████████████████ Equifax has

unequivocally expressed, and demonstrated, that it will only pay ████████████████ for Credit

Monitoring subscriptions that it deems ████████████████████████ These intentional, wrongful underpayments will cause TransUnion material and escalating harm.

70. Through the date of this Complaint, Equifax has not purchased any ████████ ████████████████████████

71. Pursuant to the parties' Agreement, ██████████████████████ are not eligible in any event to purchase ████████████████

72. Through the date of this Complaint, Equifax has not notified TransUnion of any ██████████████████████████████████████████████

73. Through the date of this Complaint, Equifax has not identified or quantified any ██████████████████████████████████████

74. Indeed, notwithstanding TransUnion's letters on September 12, 2017 and November 2, 2017, there would have been no indication to TransUnion of Equifax's unilateral position had TransUnion not contacted Equifax's Enterprise Alliance Manager on November 9, 2017.

75. TransUnion will suffer significant and material damages by Equifax's wrongful payment for Credit Monitoring on just the October 25, 2017 invoice for the ████████████ ██████████████████████

76. If Equifax continues to breach the Agreement, as it has said it will, by paying only the ████████████ for Credit Monitoring provided under the ████████ hrough the current Agreement term of September 30, 2019, TransUnion will suffer significant and escalating damages.

77.     If Equifax is permitted to continue to improperly utilize the ████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

78.     Despite Equifax's material breach of the Agreement, TransUnion has continued to provide services to Equifax with a full reservation of rights and pursuant to the Agreement in the ordinary course of business in order to ensure that consumers affected by the Equifax Breach receive the information they need.  The Agreement remains in effect, has not been terminated by any party, and is fully enforceable.

## CAUSES OF ACTION

### Count I

### (Declaratory Judgment)

79.     TransUnion hereby incorporates the allegations of paragraphs 1 through 78 as if fully set forth herein.

80.     Based upon the plain language of Amendment No. 3, TransUnion's repeated clarification of its position, and Equifax's unilateral and unequivocal determination to ignore Amendment No. 3 and underpay TransUnion, an actual controversy exists between TransUnion and Equifax regarding the parties' respective obligations under the Agreement.  The controversy is real and adverse.  Therefore, this case is properly before this Court pursuant to 28 U.S.C. § 2201.

81.     TransUnion holds a contractual right under the Agreement to receive full payment for Credit Monitoring provided to Equifax ████████████████████.



83.     This dispute is ripe for adjudication because Equifax has unequivocally stated that

it will refuse to pay TransUnion the amount due under the Agreement.

84.     TransUnion seeks a judgment declaring:

(a)

(b)     that, consistent with Equifax's own admissions and pursuant to the definitions of the Agreement, the Equifax Breach

(c)

(d)

(e)

(f)     that TransUnion is entitled to be paid ▮▮▮▮▮▮▮▮▮ by Equifax for Credit Monitoring provided to Equifax

(g)     that TransUnion is entitled to be paid ▮▮▮▮▮▮▮▮▮ by Equifax for Credit Monitoring provided to Equifax on the October 25, 2017 invoice; and

(h)     that if Equifax continues to pay the ▮▮▮▮▮▮▮ for Credit Monitoring invoiced to Equifax ▮▮▮▮▮▮▮▮▮▮▮▮ or for any Credit Monitoring purportedly ▮▮▮▮▮▮▮▮▮▮ such payment shall be deemed an underpayment and a breach of the Agreement.

## Count II

### (Anticipatory Repudiation of Contract)

85.    TransUnion hereby incorporates the allegations of paragraphs 1 through 78 as if fully set forth herein.

86.    The Agreement constitutes a valid, binding and enforceable contract between TransUnion and Equifax.

87.    The Agreement has not expired or been terminated by any party.

88.    TransUnion has satisfactorily performed, and continues to perform, all of its material obligations under the Agreement.

89.    The Agreement obligates Equifax to pay ▬▬▬▬▬▬▬▬ or Credit Monitoring provided to Equifax by TransUnion ▬▬▬▬▬▬▬▬

90.    The Agreement does not entitle Equifax to pay ▬▬▬▬▬▬▬ for Credit Monitoring subscription units ▬▬▬▬▬▬▬▬

91.    On or about September 25, 2017, TransUnion sent invoices to Equifax for Credit Monitoring, billed ▬▬▬▬▬▬

92.    TransUnion sent letters to Equifax on September 12, 2017 and November 2, 2017 explaining that the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

93.    Despite this, Equifax breached the Agreement on or about ▬▬▬▬▬ by underpaying the September 25, 2017 invoice to Equifax for Credit Monitoring provided ▬▬▬▬ ▬▬▬▬▬ Specifically, on or about ▬▬▬▬▬ Equifax, through Equifax Inc., remitted payment for Credit Monitoring invoiced on the September 25, 2017 invoice to Equifax ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

94.     On or about November 16, 2017, Equifax wired payment to TransUnion to redress the delinquent amount owed from its November 3, 2017 payment.

95.     On or about October 25, 2017, TransUnion sent invoices to Equifax for Credit Monitoring provided ███████████████████████████████████████████████ TransUnion will continue to invoice Equifax on a monthly basis for Credit Monitoring provided to Equifax under the Agreement, ████████████████ for the remainder of the Agreement's term, including any renewals.

96.     Equifax has unequivocally repudiated its obligations under the Agreement.  On or about November 9, 2017 Equifax unconditionally expressed that it intends to apply ██████ ██████████ Credit Monitoring units on current and future invoices ████████████████ ██████████████████████████

97.     On November 20, 2017 Equifax sent a letter to TransUnion ██████████████

██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████

98.     TransUnion will suffer significant and material monetary damages, increasing every month, if Equifax continues to pay only the ████████████ for Credit Monitoring provided by TransUnion, in violation of the Agreement.  The total amount of such damages will be proven at trial.

99.     TransUnion is not rescinding or repudiating the Agreement and continues to perform its obligations under the Agreement, with a full reservation of rights.   TransUnion seeks to enforce its rights under the Agreement and to recover damages caused by Equifax's anticipatory repudiation.

## JURY DEMAND

100.    TransUnion demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, TransUnion respectfully requests that the Court enter judgment in its favor and against Equifax and order as follows:

(a)    Declare:



    i.

    ii.    that, consistent with Equifax's own admissions and pursuant to the definitions of the Agreement, the Equifax Breach

    iii.

    iv.

    v.

    vi.    that TransUnion is entitled to be paid        by Equifax for Credit Monitoring provided to Equifax

    vii.    that TransUnion is entitled to be paid        by Equifax for Credit Monitoring provided to Equifax      and

    viii.    that if Equifax continues to pay the        for Credit Monitoring invoiced to Equifax      or for any Credit Monitoring      such payment shall be deemed an underpayment and a breach of the Agreement;

(b)    Enter judgment against Equifax for anticipatory repudiation of contract;

24

(c)  Award compensatory damages to TransUnion incurred due to Equifax's breach of the Agreement in an amount to be determined at trial;

(d)  Order Equifax to fulfill all of its material obligations under the Agreement and specifically to comply with the pricing and payment obligations under the Agreement; and

(e)  Award TransUnion such other and further equitable and legal relief as the Court deems fit and proper, including TransUnion's costs of suit and attorneys' fees.

Dated: November 27, 2017                    Respectfully submitted,

James H. Mutchnik, P.C.
Justin A. Barker
Luke C. Ruse
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:  james.mutchnik@kirkland.com
         justin.barker@kirkland.com
         luke.ruse@kirkland.com

*Attorneys for Plaintiffs Trans Union LLC and TransUnion Interactive, Inc.*