IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Trans Union LLC and TransUnion Interactive, Inc., | ) ) ) | 17 CV 8546 |
| | ) | Judge Ellis |
| Plaintiffs, | ) ) | Magistrate Judge Valdez |
| v. | ) ) | |
| Equifax Information Services LLC, Equifax Inc., and Equifax Consumer Services LLC f/k/a Equifax Consumer Services, Inc., | ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Patrick M. Collins
Christopher J. O'Malley
King & Spalding LLP
444 W. Lake Street
Suite 1650
Chicago, IL 60606

Phone: +1 312 995 6333
Fax:     +1 312 995 6330

*Attorneys for Defendants Equifax*
*Information Services LLC, Equifax Inc.,*
*and Equifax Consumer Services LLC f/k/a*
*Equifax Consumer Services, Inc.*

In July 2017, Equifax and TransUnion entered into a ███████████████████ ███████████████████████████████████████████████████████████████ ████ Memo. at 3, Am. Compl. ¶ 5. In its opening brief, Equifax pointed out that TransUnion conceded that ███████████████████████████████████████ Memo. at 7. Implicitly acknowledging this fatal flaw in its case, TransUnion's response has shifted its focus to the Amendment's other requirement ██████████████████████ TransUnion baldly asserts that under the plain language of the Amendment, ███████████████ ███████████████████████████████ yet it does not cite a single authority or definition to support this position. In fact, the plain meaning of the word ███████████ ██████████████████████████████████████ and thus supports Equifax's interpretation of the Amendment.

When the allegations of TransUnion's Amended Complaint are scrutinized based on the plain meaning of the key contractual terms, the flaws in TransUnion's case are manifest. While TransUnion offers a red-line markup of what it claims that Equifax's interpretation of the Amendment is, (Resp. at 9), it is actually TransUnion that would disregard the plain language and have this Court apply the following modification of the Amendment █████████████ ███████████████████████████████████████████████████████████████ █████ TransUnion's own allegations establish that Equifax is entitled to ████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████

---

[1] ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████

1

2

Because TransUnion's flawed interpretation of the Amendment infects all of TransUnion's claims for relief and cannot be cured, the case should be dismissed in its entirety with prejudice.

**I.     TransUnion's Amended Complaint Alleges a** ███████████

The Amended Complaint focused on ███████████

███████████

███████████

███ *See* Am. Compl. ¶¶ 6, 49, 50, and Am. Compl. Ex. 2 (emphasis in original). After Equifax pointed out that TransUnion's own allegations conceded that ███████████ ███████████ (Memo. at 7-9), TransUnion shifted its emphasis to the Amendment's other requirement for lower pricing—███████████ *See* Resp. Br. at 8, 9 (emphasis in original).[2]  Although TransUnion asserts ███████████ ███████████ (Resp. Br. at 7-9), conspicuously absent from its brief is a single citation to a definition of ███████ that supports this position, whether from the dictionary or case law.  The only support TransUnion offers is its own conclusory and self-serving proclamation that ███████████

███████████

███████████ Resp. Br. at 9 (emphasis added).  But TransUnion does not offer any definition in support of that position, and cannot, because under any definition ███████

███████████

███████

───────────────

[2] ███████████

███████████

███████████ *See* Memo. at 9.

Under Delaware law, the interpretation of contractual language is a question of law that is proper to resolve at the motion to dismiss stage. *See Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ct. 2006). It is well established under Delaware law that written contracts are to be interpreted according to the plain and ordinary meaning of the language used. *See Northwestern Nat'l Inc. Co. v. Esmark, Inc.*, 672 A.2d 41, 44 (Del. 1996) (interpreting contract terms using dictionary definitions); *see also Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006) ("Under well-settled case law, Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract.").

Ignoring the true meaning of ███████████ TransUnion's interpretation of the Amendment—indeed, its entire Amended Complaint—is based on the faulty premise that ███ ████████████████████████████████████████████████████ Resp. Br. at 7-9.

The actual plain and ordinary meaning of ███████████ flatly contradicts TransUnion's claim that ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████

TransUnion's own allegations make clear that ███████████████████████ ████ for purposes of the Amendment. This interpretation is consistent with the plain meaning of ███████████████████████████████████████████████████

3

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███

Applying the actual definition of ████████ makes clear that ████████ ████████████████ under the Amendment.

## II. TransUnion's Flawed Interpretation of the Amendment Dooms its Entire Case

The Amended Complaint purports to assert three causes of action against Equifax: declaratory judgment (Count I), breach of contract (Count II), and anticipatory repudiation of contract (Count III). The foundation of each of those claims is TransUnion's flawed position ████████████████████████████████████████████████████████████████ ████████ *See* Am. Compl. ¶¶ 88, 91(b) (Count I), 97, 99, 102, 104 (Count II), 111, 114, 117, 121, 123, 124 (Count III). While TransUnion asserts that it stated a claim for unjust enrichment, (*see* Resp. Br. at 1), this is not true, as the Amended Complaint makes no attempt to plead a count for unjust enrichment. *See* Am. Compl. ¶¶ 86-126.

Because each of TransUnion's causes of action are based on its assertion that ██████ ████████████████████████████████████████████████████████████████, the entire Amended Complaint must be dismissed. To state a claim for breach of contract under its interpretation of the Amendment, TransUnion must allege: ████████████████████ ████████████████████████████████████ However, TransUnion's own allegations make clear that: ████████████████████████████

4

███████████████ (*see* Part I, *supra*); and (2) ███████████████████████████████████████████████████████████████████████ (and never contested in TransUnion's Response Brief). *See* Memo. at 7-10.

As a matter of law, TransUnion's Amended Complaint relies upon an incorrect interpretation of the Amendment, meaning that each of TransUnion's causes of action lacks facial plausibility under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Without citation, TransUnion claims that Equifax's motion to dismiss should be denied because it did not address all of TransUnion's principal allegations or requests for relief. *See* Resp. Br. at 13-14. Equifax has demonstrated why each of TransUnion's three causes of action fails to state a claim, and therefore, the entire Amended Complaint should be dismissed. Without a viable cause of action to serve as a vehicle to deliver relief, TransUnion is not entitled to any of its requested relief. *See Twombly*, 550 U.S. at 569 n.14 (explaining "the complaint warranted dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible."). TransUnion's own allegations establish that ██████████████████████████████████████████████████████████████████████████████████████, and undercut each one of TransUnion's claims as set forth below.

a. **Count I – Declaratory Judgment**: TransUnion's claim for declaratory judgment should be dismissed, as its own allegations demonstrate that its interpretation of the Amendment's applicability to ████████████ is incorrect as a matter of law. TransUnion attempts to muddy the waters by discussing the procedural elements of declaratory judgment when its underlying substantive claim cannot survive. The question Equifax has raised is not whether declaratory judgment is proper as a procedural matter, but whether TransUnion has pleaded facts that plausibly demonstrate that it is entitled to the substantive rights it seeks under

5

the Amendment. *See* Memo. at 6-10. TransUnion's incorrect interpretation of the Amendment dooms not only its underlying breach of contract claim, (*see* Part II.b, *infra*), but also the declaratory judgment cause of action. *See Trusa v. Nepo*, No. CV 12071-VCMR, 2017 WL 1379594, at *8, n.71 (Del. Ch. Apr. 13, 2017) ("because I am dismissing the underlying claims for failure to state a claim . . . there is no need to resolve the declaratory judgment count. Therefore, this claim is dismissed."); *Hummel v. St. Joseph Cty. Bd. of Commissioners*, 57 F. Supp. 3d 902, 918 (N.D. Ind. 2014) ("declaratory judgments are forms of relief based on underlying claims. Because the Court concludes that none of Plaintiff's claims can withstand dismissal at this time, Plaintiff's request for declaratory relief cannot survive and should be dismissed with prejudice.") (internal citations omitted).

TransUnion also claims that declaratory judgment is necessary to prevent future disputes regarding the application of the ███████████████████████ *See* Resp. Br. at 11. Not so, as dismissal with prejudice would have res judicata effect and settle the rights of the parties *vis-à-vis* ███████████. *See Kaufman v. Nisky*, 2011 WL 7062500, at *1 (Del. Super. Ct. Dec. 20, 2011) ("In Delaware, a dismissal with prejudice is considered an adjudication on the merits. When an action has been dismissed on its merits, the res judicata doctrine forecloses a losing party from reasserting for a second time the same cause of action against the same party."); *Savage v. Himes*, 2010 WL 2006573, at *3 (Del. Super. Ct. May 18, 2010) *aff'd*, 9 A.3d 476 (Del. 2010) ("A dismissal 'with prejudice' is [an] adjudication 'on the merits' and res judicata forecloses a losing party from asserting an adjudicated claim against the same party."). Dismissal with prejudice is appropriate for the reasons set forth in Part IV, *infra*.

DMSLIBRARY01\31982431.v2

As discussed above, whether focusing on ▇▇▇▇▇▇▇ or the Amendment as a whole, TransUnion's underlying interpretation of the Amendment cannot survive as a matter of law. Its claim for declaratory judgment should be dismissed.

      b.      **Count II – Breach of Contract**: TransUnion's breach of contract count fails to state a claim because the essential element—a breach of the Amendment—is belied by TransUnion's own allegations. *See H-M Wexford LLC v. Encorp, Inc.,* 832 A.2d 129, 140 (Del. Ch. 2003) (setting forth elements of breach of contract cause of action). As set forth above, TransUnion's own allegations establish that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*see* Part I, *supra*), which under the plain language of the Amendment, entitles Equifax to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

TransUnion attempts to avoid dismissal by asserting that Equifax has somehow breached the Amendment because Equifax ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Resp. Br. at 13-14. This red herring cannot save TransUnion's breach of contract claim, as TransUnion has not properly alleged the contractual source of any obligation for Equifax to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ While the Amended Complaint contains allegations that Equifax ▇▇▇▇▇▇▇▇▇, (Am. Compl. ¶ 45, 53, 84), neither the Amended Complaint nor the Response Brief cite any contractual language to support an obligation to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. TransUnion's allegations regarding ▇▇▇▇▇ cannot create obligations for Equifax that are not contained in the Amendment. *See Polzin v. Gage*, 636 F.3d 834, 838 n.1 (7th Cir. 2011) (holding that when a document contradicts a complaint to which it is attached, the document controls).

7

Review of the Amendment itself confirms that the Amendment imposes no obligations on the parties regarding ███████████████████████. *See* Am. Compl. Ex. 1. The Amendment, ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ *See id.* It imposes no requirements on the parties to ██ ████████████████████████████████████████████████████. *See id.* Because Equifax was under no contractual obligation to ████████████████ ████████████████████████████, TransUnion cannot state a claim for breach of the Amendment.

    **c.**     **Count III – Anticipatory Repudiation**: The Amended Complaint fails to plausibly allege that Equifax repudiated the contract. Even when accepting TransUnion's allegations to be true, TransUnion fails to state a claim that Equifax repudiated the contract when: (a) Equifax stated it would continue to perform under the contract's plain language (Am. Compl. ¶ 68 and Ex. 7), and (b) both parties continue to perform under the contract to the present (Am. Compl. ¶¶ 70, 73, 77, 85).

When Equifax sent TransUnion letters setting forth ████████████████████ ████████ under the Amendment's plain language, Equifax did not make "a statement of intent *not* to perform *unless* terms different from the original contract are met." *PAMI-LEMB I Inc. v. EMB-NHC, LLC*, 857 A.2d 998, 1014 (Del. Ch. 2004) (emphasis added). Rather, Equifax sought to honor the terms of the Amendment ████████████████████████████████. Even if the Court were to ultimately disagree with Equifax's interpretation of the Amendment's plain

8

language, Count III should still be dismissed under United States Supreme Court precedent holding an "offer to perform in accordance with the promisor's interpretation of the contract although erroneous, if made in good faith, is not such a clear and unequivocal refusal to perform as amounts to a renunciation giving rise to an anticipatory breach." *Ricketts v. Adamson*, 483 U.S. 1,19 (1987). Equifax's interpretation of the Amendment, which is nothing more than a good faith dispute with TransUnion about the applicability of the Amendment's lower rate to the credit monitoring subscriptions that arose from the Equifax Breach, is not a repudiation of either the Amendment or Contract.

TransUnion's admission that both parties continue to perform under the Contract and Amendment further dooms its claim of anticipatory repudiation. *See* Am. Compl. ¶¶ 70, 73, 77, 85. It has been long understood that continuing performance by the parties under a contract vitiates a claim of repudiation. *See, e.g.*, *Blakely v. Fid. Mut. Life Ins Co.*, 154 F. 43, 44 (3d Cir. 1907). TransUnion's allegations make clear that Equifax never repudiated the contract, and in fact, both parties continue to perform under the contract, so TransUnion's anticipatory repudiation claim must be dismissed for failure to state a claim.

**III.  Equifax Inc. is Not a Proper Defendant**

Regardless of the Court's ruling on the contractual interpretations central to this case, parent company Equifax Inc. is not a proper defendant, as TransUnion failed to properly allege Equifax Inc. adopted the contract.

TransUnion's Response Brief quotes *Am. Legacy Found. v. Lorillard Tobacco Co.* as its sole support for the proposition that "third parties to an agreement may become parties to it, and thus bound by it, by either expressly or implicitly adopting the agreement." 831 A.2d 335, 344 (Del. Ch. 2003). Conspicuously, TransUnion omitted reference to the paragraph that

9

immediately follows the quoted excerpt, which goes on to state, "[t]he contract itself, however, must contemplate that non-signatories may adopt it. Thus, whether a non-signatory can nevertheless be bound to a contract through adoption is, *in the first instance, a question of contract interpretation-that is, whether the original parties intended to create or permit future contractual obligations through adoption by non-signatories*." *Id*. (emphasis added). TransUnion has cited no contractual language to suggest the parties had any such intention in the original contract or in the Amendment.

For these reasons, Equifax Inc. should be dismissed from the case, independent of the Court's ruling on the interpretation of the Amendment.

## IV.     Dismissal with Prejudice is Proper When Further Amendment Would Be Futile

The Court should dismiss this case with prejudice because adoption of Equifax's interpretation of the Amendment would render any attempt by TransUnion to further amend its pleading futile. Amending a pleading is futile when a plaintiff attempts to "reassert a claim previously determined," "fails to state a valid theory of liability," or amends to add a claim that "could not withstand a motion to dismiss." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992). Should the Court adopt Equifax's interpretation of the Amendment, there would be no remaining claims to be adjudicated. This is made clear by TransUnion's desperate attempt to manufacture additional claims against Equifax that do not withstand even the slightest scrutiny. *See* Resp. Br. at 15 n.10.

The unjust enrichment, quasi-contract, and implied contract claims TransUnion floats are inherently implausible based on the existence of a contract between Equifax and TransUnion. *See e.g.*, *Nemec v. Shrader*, No. CIV.A. 3878-CC, 2009 WL 1204346, at *6 (Del. Ch. Apr. 30, 2009) ("Plaintiffs cannot now maintain an unjust enrichment claim in the face of a valid and

enforceable contract."); *Furnari v. Wallpang, Inc.*, No. CV13C04287JRJCCLD, 2014 WL 1678419, at *9 (Del. Super. Ct. Apr. 16, 2014) ("The court may dismiss quasi-contract and unjust enrichment claims where a plaintiff has failed to allege a right to recovery that is not otherwise controlled by a contract."), *Eisenmann Corp. v. Gen. Motors Corp.*, No. C.A. 99C-07-260-WTQ, 2000 WL 140781, at *14 (Del. Super. Ct. Jan. 28, 2000) ("Courts of this State have long recognized that recovery on [an implied contract] theory will be considered only if it is determined that the relationship of the parties is not governed by an express contract."). Further, TransUnion's proposed tortious interference claim would fail, as a party to a contract cannot tortiously interfere with its own contract. *See, e.g.*, *Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 531 (D. Del. 2012) ("a party to a contract cannot tortiously interfere with that very same contract."). TransUnion's preview of the futile claims it would bring if allowed a chance to replead is dispositive evidence that the Court should dismiss this case with prejudice.

## CONCLUSION

For the reasons stated, the Equifax Defendants respectfully request that the Court grant its Motion to Dismiss with prejudice, and award such further relief as the Court deems appropriate.

Respectfully submitted,

Dated: March 19, 2018

KING & SPALDING LLP

By: */s/ Patrick M. Collins*
    Patrick M. Collins

11

Patrick M. Collins
pcollins@kslaw.com
Christopher J. O'Malley
comalley@kslaw.com
444 W. Lake Street
Suite 1650
Chicago, IL 60606

Phone: +1 312 995 6333
Fax:     +1 312 995 6330

*Attorneys for Defendants Equifax Information Services LLC, Equifax Inc., and Equifax Consumer Services LLC f/k/a Equifax Consumer Services, Inc.*

12

DMSLIBRARY01\31982431.v2

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted,

Dated: March 19, 2018

KING & SPALDING LLP

By: */s/ Patrick M. Collins*
    Patrick M. Collins

Patrick M. Collins
pcollins@kslaw.com
Christopher J. O'Malley
comalley@kslaw.com
444 W. Lake Street
Suite 1650
Chicago, IL 60606

Phone: +1 312 995 6333
Fax:    +1 312 995 6330

*Attorneys for Defendants Equifax Information Services LLC, Equifax Inc., and Equifax Consumer Services LLC f/k/a Equifax Consumer Services, Inc.*